_____



SO ORDERED,

*[signature]*

Judge Neil P. Olack
United States Bankruptcy Judge
Date Signed: January 29, 2015

The Order of the Court is set forth below. The docket reflects the date entered.
_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

IN RE:

| | |
|---|---|
| MICHAEL ANTHONY TOUCHSTONE, | CASE NO. 14-12197-NPO |
| DEBTOR. | CHAPTER 13 |
| MICHAEL ANTHONY TOUCHSTONE | PLAINTIFF |
| VS. | ADV. PROC. NO. 14-01082-NPO |
| T & S SAWMILL, INC. | DEFENDANT |

**<u>MEMORANDUM OPINION AND ORDER REQUIRING TURNOVER OF PROPERTY</u>**

This matter came before the Court for trial on January 15, 2015 (the "Trial") on the Complaint for Turnover of Property and for Damages (the "Complaint") (Adv. Dkt. 1)[1] filed by Michael Anthony Touchstone (the "Debtor") and the Response to Complaint for Turnover of Property and Motion to Hold Stay Inapplicable (the "Answer") (Adv. Dkt. 8) filed by T & S Sawmill, Inc. d/b/a Arkansas Best Logging, LLC ("T & S") in the Adversary. At the Trial, John M. Sherman represented the Debtor, and B. Blake Teller represented T & S. The Court, after considering the pleadings, the evidence and testimony presented at the Trial, and the arguments

---

[1] Citations to the record are as follows: (1) citations to docket entries in the above-styled adversary proceeding (the "Adversary") are cited as "(Adv. Dkt. ____)"; and (2) citations to docket entries in the above-styled bankruptcy case (the "Bankruptcy Case"), are cited as "(Bankr. Dkt. ____)".

of counsel, ruled from the bench and ordered that T & S turnover the pieces of property requested by the Debtor. This Opinion memorializes and supplements the Court's ruling.

## Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this case pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (E). Notice of the Complaint was proper under the circumstances.

## Facts[2]

1.      On June 11, 2014, the Debtor filed a petition for relief (the "Petition") (Bankr. Dkt. 1) pursuant to chapter 13 of the U.S. Bankruptcy Code.

2.      On September 26, 2014, T & S filed a proof of claim (the "T & S Proof of Claim") (POC 5-1) in the amount of $285,000.00. Attached to the T & S Proof of Claim was a copy of the ledger associated with the Debtor's open account with T & S (the "Ledger").

3.      On October 31, 2014, the Debtor filed the Complaint requesting the Court to order T & S, a corporation that had contracted logging work to the Debtor, to turnover several items of equipment to the Debtor and seeking compensatory and punitive damages as a result of T & S's refusal to turnover the property. Specifically, the Debtor is requesting the Court to order that T & S turnover the follow items:

       1) "410 E Loader"

       2) "CSI Cut up Bucksaw"

---

[2] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

      3) "Cat 525 Bidder"[3]

      4) "Tiger Cat cutter"

      5) "Tiger Cat skidder grapple"

      6) "Tiger Cat skidder blade"

      7) "30.5 skidder tire"

      8) "Log bed for army truck"

      9) "Log cable"

      10) "6 x 6 army truck"

      11) "1988 Peterbuilt tractor truck"

Collectively, the Court will refer to these eleven (11) items as the "Subject Items." According to the Debtor, the Subject Items were in T & S's possession prior to the date the Debtor filed the Petition, and T & S has refused to return the Subject Items to the Debtor despite the Debtor's repeated demands. Further, the Debtor alleges that the Subject Items are necessary equipment for his work as a logger and, thus, are necessary for an effective reorganization.

      4.    On November 6, 2014, T & S filed the Answer claiming that it is the rightful owner of the Subject Items and requesting the Court to enter an order providing that the automatic stay does not apply to the Subject Items.

      5.    At the Trial, T & S conceded that it does not have any interest in the following items:

      1) "410 E Loader"

      2) "CSI Cut up Bucksaw"

---

[3] At the Trial, the Debtor informed the Court that this item was incorrectly described and that the item is actually a "Caterpillar 525b Skidder." Thus, hereinafter, the Court will refer to this item as the "Caterpillar 525b Skidder."

      3) "Tiger Cat skidder grapple"

      4) "Tiger Cat skidder blade"

      5) "30.5 skidder tire"

      6) "Log bed for army truck"

      7) "Log cable"

      8) "6 x 6 army truck"

      6.      As for the Caterpillar 525b Skidder and the Tiger Cat cutter, T & S claimed at the Trial that it owns the two items. T & S claimed that it had lent the items to the Debtor while he was providing contract work for the sawmill. The Debtor contrarily claimed that he owns the items and that T & S had provided the financing for the original purchase of the two items.

      7.      Finally, regarding the 1988 Peterbuilt tractor truck, T & S argued that it is entitled to possess the vehicle because it is a lienholder on the vehicle and it repossessed the vehicle prior to the day the Debtor filed the Petition.

## Discussion

11 U.S.C. § 542 ("Section 542") governs turnover of property to the estate. To warrant turnover under Section 542, the property must be property of the bankruptcy estate and the debtor must demonstrate either that the repossessed property may be used, sold, or leased by the debtor, or that the debtor may exempt the property under 11 U.S.C. § 522. *Bolton v. Quick Cash Title Loans (In re Bolton)*, 466 B.R. 831, 835 (Bankr. S.D. Miss. 2012). T & S concedes that it does not have an interest in eight (8) of the items sought by the Debtor for turnover. *See* ¶ 5. Moreover, the Debtor testified that he owned all eight (8) of the items, that they are currently in the possession of T & S, and that they are necessary for his logging operations. Therefore, the

Court finds that T & S should turnover the eight (8) items listed in paragraph 5 of this Opinion to the Debtor pursuant to Section 542.

As for the Caterpillar 525b Skidder and the Tiger Cat cutter, the Debtor testified at Trial that he financed the purchase of both items through T & S, and that T & S charged the Debtor's open account with T & S for the purchase price of the items. In addition, the Ledger that was attached to the T & S Proof of Claim supported the Debtor's testimony by showing that T & S had charged the Debtor's open account for the full purchase price of the two items and money that T & S spent repairing the Caterpillar 525b Skidder after it took possession of the item.

Jason Fly ("Fly"), a manager for T & S, disputed the Debtor's testimony and the contents of the Ledger by testifying that T & S owns the two items and that it had lent the items to the Debtor while he was providing contract work for the sawmill. At Trial, T & S admitted into evidence a version of the Ledger that T & S generated after it filed the T & S Proof of Claim (the "T & S Ex. 1") (T & S Ex. 1). The newer version of the Ledger provides that T & S credited the purchase price amounts back to the Debtor's open account prior to the date the Debtor filed the Petition. Despite this "adjustment" of the Ledger in T & S Exhibit 7, T & S never amended the T & S Proof of Claim that was filed in September 2014.

After weighing the evidence and assessing the truthfulness and accuracy of the Debtor's testimony and Fly's testimony, the Court has determined that the Caterpillar 525b Skidder and the Tiger Cat cutter were purchased by the Debtor and financed by T & S. Specifically, the Court found the Debtor's testimony to be more credible than Fly's testimony.[4] Further, the Ledger

---

[4] The Court found Fly to be very reluctant to discuss T & S's business practices and procedures. It took repeated questioning from both the Debtor's counsel and the Court to develop Fly's testimony and to discover that T & S does finance the purchase of logging equipment for its contracted loggers. In addition, he deferred answering several questions about T & S's policies regarding loggers' open accounts and the Ledger because he is "not the bookkeeper."

attached by T & S to its proof of claim supports the Debtor's testimony and is more credible than the "adjusted" version admitted into evidence at Trial. As a result of the Debtor's ownership interest in the Caterpillar 525b Skidder and the Tiger Cat cutter, the two items are property of the estate. Additionally, the Debtor testified that the two items are necessary for his logging operations. For these reasons and the reasons the Court stated at Trial, the Court finds that T & S should turnover these two items to the Debtor in accordance with Section 542.

The Court also finds that T & S should turnover the 1988 Peterbuilt tractor truck to the Debtor. T & S argues that it is entitled to possess the vehicle because it is a lienholder and it repossessed the vehicle prior to the day the Debtor filed the Petition. However, it is well established that if a secured creditor repossesses a debtor's property prepetition, that property may still be included in the bankruptcy estate and, thus, be subject to turnover under Section 542. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983); 11 U.S.C. § 541(a)(1) (providing that property of estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case"); *see also Mitchell v. BankIllinois*, 316 B.R. 891, 895-98 (S.D. Tex. 2004) ("While there are explicit limitations on the reach of § 542(a), none requires that the debtor hold a possessory interest in the property at the commencement of the reorganization proceedings."). Whether property, in this case, the 1988 Peterbuilt tractor truck, is property of the estate hinges on whether ownership of the vehicle passed to T & S prior to the date the Debtor filed the Petition. T & S stated at the Trial that it did not take any action beyond repossession to transfer ownership of the vehicle from the Debtor to T & S under applicable state law. This Court agrees with the vast majority of courts that have held that repossession is merely a device to collect on a creditor's claim and, thus, does not transfer ownership to the creditor. *See* 5 COLLIER ON BANKRUPTCY ¶ 542.02[2] (16th ed. 2014) (collecting cases); Keith M. Lundin &

William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 46.2 at ¶ 4 (collecting cases). For this reason, the Court finds that the 1988 Peterbuilt tractor truck constitutes property of the estate, and T & S should turnover the vehicle to the Debtor pursuant to Section 542.

Finally, as a result of the Court's holding that the Subject Items are all property of the Debtor's bankruptcy estate and must be returned to the Debtor, the Court finds that the part of T & S's Answer that requests the Court to hold that the automatic stay is inapplicable to the Subject Items should be denied.

## Conclusion

For the reasons stated above and the reasons stated by the Court at Trial, the Court finds that T & S should turnover the Subject Items to the Debtor. Further, the Court finds that T & S's request that the Court holds that the automatic stay is inapplicable to the Subject Items should be denied. A separate order will be entered consistent with this Opinion. A final judgment, however, will not be entered until the final disposition of the Adversary. In accordance with the Scheduling Order (Adv. Dkt. 15), upon completion of discovery, and following the issuance of the Court's decision in regard to any dispositive motions, the Court shall schedule a status conference for the purpose of setting a deadline for the entry of a pretrial order and a date for the trial on the issue of damages.

##END OF OPINION##